UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRIAN FARIA AND MELISSA FARIA : | |
| Individually and as Parents of : | |
| M.F. AND R.F. : | |
| : | |
| VS. : | C.A. NO.: 13-0484-M-LDA |
| : | |
| HARLEYSVILLE WORCESTER : | |
| INSURANCE COMPANY : | |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY FROM DEFENDANT'S EXPERT, KERRY ALVINO

A.    **Facts**

On March 12, 2010, Plaintiff Brian Faria, was operating a vehicle owned by KBG, Inc. d/b/a Silver Lake Auto and insured by Harleysville Worcester Insurance Company. Mr. Faria was travelling to the ADESA auto auction. He was operating the vehicle on 95 North in Mansfield, Massachusetts near the 495 exit ramps. Mr. Faria was travelling in the center lane of 95 North just prior to the accident. At some time just prior to the accident, a vehicle travelling in the right lane attempted to merge into the center lane, cutting Mr. Faria off.

As a result of the vehicle merging from the right, Mr. Faria quickly turned his vehicle to the left to avoid the collision. Mr. Faria's vehicle drove through the left travel lane and entered the rumble strip off of the marked roadway. At that point in time, Mr. Faria quickly turned the vehicle to the right in order to get back onto the road. After Mr. Faria entered the center lane once again, he tried to correct the course of his vehicle causing him to over steer and he lost control of the vehicle. Mr. Faria's vehicle impacted a tree in the median.

Mr. Faria was mechanically removed from the vehicle and transported via ambulance to Rhode

1

Island Hospital. As a result of the accident, Mr. Faria suffered severe traumas all over his body and underwent numerous surgeries. Mr. Faria filed a claim with Silver Lake's insurer Harleysville Worcester Insurance Company under the UM coverage of the policy due to being involved in a near hit-and-run accident. As of this date, the Defendant has failed to make any offer to settle this matter, which caused the Plaintiffs to file the instant litigation.

B.  **Legal Standard**

The Supreme Court asserted in Daubert that trial courts perform a gatekeeping role in regulating the admission of expert testimony under Fed. R. Evid. 702. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, at 589-95 (1993). That screening function entails a preliminary evaluation of the proffered expert testimony for both reliability and relevance. See Daubert, 509 U.S. at 591-595; Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 80 (1st Cir. 1998) (*citing* Daubert). The review for reliability encompasses an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. As to the relevancy criterion, "expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Troche, 161 F.3d at 81 (citation omitted) (*citing* Daubert, 509 U.S. at 591-92).

C.  **Argument**

The Defense expert's reconstruction lacks any scientific analysis that could aid the trier of fact with any issue in this case and amounts to pure personal opinions, observations the reliability requirements of Daubert. In Daubert, the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation:

2

"(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (*citing* Daubert, 509 U.S. at 593-94). However, these factors do not "constitute a definitive checklist or test," and the question of admissibility "must be tied to the facts of a particular case." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, (1999) (internal quotation marks omitted).

Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This language makes no relevant distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. It makes clear that any such knowledge might become the subject of expert testimony. Kumho Tire Co. v. Carmichael, 536 U.S. 137, 149 (1999)

In Daubert, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 5896 (1993)It 'requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility.' Id. at 592. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho Tires Co. v. Carmichael, 526 U.S. 137, *citing Daubert,* 509 U.S. at 592. Daubert requires the court to determine "'whether the reasoning or methodology underlying [proffered expert] testimony is

3

scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'"Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 188 (1st Cir. 1997) (*quoting* Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796). The "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." GE v. Joiner, 522 U.S. 135, 146 (1997) *quoting* Daubert, 509 U.S. at 595. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *See* Turpin v. Merrell Dow Pharmaceuticals, Inc., 959 F.2d 1349, 1360 (CA 6), cert. denied, 506 U.S. 826, 121 L. Ed. 2d 47, 113 S. Ct. 84 (1992).

Kerry Alvino's reconstruction is based on her review of materials provided to her by defense counsel and based her conclusions entirely on her interpretation of the facts and statements contained in those materials. Alvino's conclusions and opinions are not the result of any particular scientific methodology, nor are they based on any unique knowledge or expertise. As such Alvino's opinions and conclusions lack the reliability required by Daubert and provide no assistance to the jury in assessing the evidence as presented.

In forming her opinion, Ms. Alvino assumes the role of fact-finder, not an expert, and decides that Mr. Puliafico is more credible than Mr. Faria and all together disregards the observation of Trooper Collins. It is apparent that Ms. Alvino has failed to recognize that Mr. Puliafico has stated at two different depositions that he did not see Mr. Faria's vehicle leave the roadway. (Puliafico Deposition September 11, 2014 Line 93:18 – 93:23) Mr. Puliafico has stated that when he looked up from his phone, Mr. Faria was already off the roadway. (Puliafico Deposition September 11, 2014 Line 93:18 – 93:23; Puliafico Deposition June 9, 2014 P9 :22 – P.10 – 6) Mr. Puliafico did not see whether Mr. Faria drifted off the road, was cut off by another

vehicle or swerved off the road and into dirt strip next to the travel lane. (Puliafico Deposition September 11, 2014 Line 93:24 – 94:3; Puliafico Deposition June 9, 3014 9:22 – 10:6)

Based on her determination of credibility, Ms. Alvino's opines "that the materials reviewed confirm that the incident in question occurred more consistently with the version provided by the independent witness, John Puliafico…" This statement is interesting because it bases her whole opinion on the limited amount of materials reviewed. There were numerous other sources of information available to Ms. Alvino to assist her in forming her opinion that she utterly failed to apprise herself of.

Ms. Alvino, a former Lieutenant of the Massachusetts State Police failed to contact Trooper Kevin Collins, the investigating Trooper, to discuss the accident or any of his findings. In Trooper Collins report, he states "I determined that the operator of the vehicle was traveling in the middle lane when he began to swerve his vehicle in to the left lane." This statement is extremely important for two reasons. First, the Trooper has Mr. Faria in the middle lane, even though Puliafico does not remember Mr. Faria ever being in the middle lane. (Puliafico Deposition September 11, 2014 54:12 – 54:14; Puliafico Deposition June 9, 2014 14:10 – 14:11 2) Second, the Trooper states Faria swerved from the middle lane to the left lane, which contradicts the expert's opinion that Mr. Faria merely drifted from the left lane onto the dirt. Besides failing to interview the Trooper, Alvino failed to interview Mr. Faria or any other witnesses to the accident.

Attorney John Harwood and I met with Trooper Collins on March 30, 2015, and learned critical information pertaining to the accident and were in the receipt of 46 photographs that were taken by the State Police of the accident scene and damage to the vehicle. Ms. Alvino has failed to view any of these photographs in forming her opinion.

5

Ms. Alvino failed to perform a site visit of the accident location to take measurements that are regularly relied on by accident reconstruction experts in forming their opinions.

Furthermore, Ms. Alvino only reviewed two photographs in connection with the accident. The two photographs as provided by Defense counsel are two aerial photographs of 95 North encompassing the accident scene. These photographs are not usually relied on by experts in the field of accident reconstruction in forming their opinions.

D. **CONCLUSION**

Alvino merely reviewed the materials provided to her by defendants' counsel and based her conclusions entirely on her interpretation of the facts and statements contained in those materials. Alvino did not take any measurements or photographs for her assignment in the case. She did not physically survey the scene of the accident, interview any of the witnesses or any member of law enforcement that were at the scene, or examine any of the vehicles involved in the accident. With respect to the cause of the accident, Alvino is unable to explain what methodology she employed or how her education, training or experience enabled her to arrive at his conclusions.

Plaintiffs' Moiton in Limine to prevent the Defense expert from testifying should be granted because the Defense expert's reconstruction lacks any scientific analysis that could aid the trier of fact with any issue in this case and amounts to pure personal opinions, observations the reliability requirements of Daubert.

                                            Plaintiffs,
                                            By Counsel,
                                            /s/ Brian N. Goldberg, Esq
                                            Brian N. Goldberg, Esq.
                                            Attorney # 7585
                                            McKinnon & Harwood, LLC
                                            1168 Newport Avenue
                                            Pawtucket,  RI  02861
                                            (401) 723-9655
                                            bng@mckinnonharwood.com

## **CERTIFICATION**

       I hereby certify that on this date, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.  The document is available for viewing and downloading through the system

/s/ Brian N. Goldberg, Esq.
Brian N. Goldberg, Esq. #7585