UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRIAN FARIA and MELISSA FARIA, Individually and as Parents of M.F. and R.F, Plaintiffs, <br><br> v. <br><br> HARLEYSVILLE WORCESTER INSURANCE COMPANY, Defendant. | C. A. No. 13-484-M |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Brian Faria suffered injuries resulting from a March 2012 car accident that he asserts was caused by the reckless conduct of an unidentified driver. Mr. Faria and his wife Melissa Faria, individually and as the parents of their two minor children, sued their insurance company Harleysville Worcester Insurance Company because Harleysville denied Mr. Faria coverage under the uninsured motorist (UM) provision in his automobile policy. (ECF No. 1-1). A jury was selected, heard the case, and found in Harleysville's favor. (ECF No. 91). Mr. Faria moves for a new trial, arguing that a juror should have been disqualified from jury service under 28 U.S.C. § 1865(b)(5) and that the verdict was against the weight of the evidence. (ECF No. 97). For the following reasons, the Court DENIES Mr. Faria's motion.

I.  **FACTS & TRAVEL**

Prior to the commencement of trial, the parties selected a jury comprised of Juror #1[1] and seven other individuals. Prior to being selected to serve on the jury, Juror #1 completed a jury questionnaire and a juror information form, which asked whether he had ever been convicted of a

---

[1] The Court later selected Juror #1 to serve as the jury foreperson.

felony, and if so, whether his civil rights were restored. Juror #1 responded on both documents that he had a prior felony conviction in 1997 and that his civil rights were restored. In the remarks selection of the juror questionnaire, Juror #1 stated that he was sentenced to serve four years imprisonment, but was required to serve only eighteen months. Additionally, Juror #1 explained that he believed that his civil rights were restored because his voting rights were reinstated.[2]

At trial, Mr. Faria presented evidence, mainly through his own testimony, that he was driving on Route 95 north in Mansfield, Massachusetts when a vehicle traveling in the right hand lane essentially cut him off causing him to lose control of his vehicle, which hit a tree. The focus of Harleysville's case was to dispute the existence of another vehicle. Harleysville presented evidence to show that no other driver on the road that day witnessed another vehicle swerve into Mr. Faria's lane. The jury heard from Mr. Faria; Massachusetts State Trooper Kevin Collins who investigated at the scene of the accident and did not note the presence of another vehicle in his report; Mr. Jonathan Puliafico who was driving in the area that day and called 911 after seeing Mr. Faria's vehicle driving erratically; and an accident reconstructionist who testified that there could not have been another vehicle that caused Mr. Faria to swerve and hit the tree.

After a four-day trial, the jury returned a unanimous verdict for Harleysville. Mr. Faria now moves for a new trial. According to his motion, Mr. Faria received a tip after the trial that Juror #1 had been convicted of a felony. (ECF No. 100 at 1). Specifically, Mr. Faria learned that Juror #1 was convicted in Rhode Island state court of assault with a deadly weapon in 1997 and was sentenced to fifteen years imprisonment, with four years to serve and an eleven year

---

[2] According to Mr. Faria, the Jury Administrator explained to him sometime after the verdict that he was aware of Juror #1's prior conviction and that his criminal record had been slated for a side bar with the Court. (ECF No. 100 at 2). The Court is not aware of any request by any party for a side bar concerning a juror.

2

suspended sentence to run concurrent with probation. *State v. Rieger*, 763 A.2d 997, 1000 (R.I. 2001). Mr. Faria argues that the jury verdict should be cast aside and a new trial should be granted because Juror #1 should have been disqualified from jury service due to his current suspended sentence. Additionally, Mr. Faria argues that the verdict was not supported by the weight of the evidence presented at trial.

## II. STANDARD OF REVIEW

A "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A district court may order a new trial "'only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.'" *Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007) (quoting *Casillas–Diaz v. Palau*, 463 F.3d 77, 81 (1st Cir. 2006)). Judicial interference with a jury verdict is warranted only where the verdict represents "'a blatant miscarriage of justice.'" *Acevedo–Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir. 2003) (quoting *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir. 1994)).

"It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusions as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 35 (1944). The Court "cannot displace a jury's verdict merely because he disagrees with it" or because "a contrary verdict may have been equally ... supportable." *Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996) (internal citation omitted). In other words, a district court judge does not sit as a thirteenth juror who may set aside a verdict

simply because that court would have reached a different conclusion. *United States v. Rothrock*, 806 F.2d 318, 322 (1st Cir. 1986).

## III. ANALYSIS

### A. Qualification of a Convicted Felon for Jury Service

Mr. Faria stakes most of his motion for a new trial on the argument that Juror #1, as a convicted felon, should not have served on the jury at his trial. The qualification for jury service as dictated by 28 U.S.C. § 1865 provides that any person shall be deemed "qualified to serve on grand and petit juries in the district court unless he . . . has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored." 28 U.S.C. § 1865(b)(5). The Court must first consider whether Juror #1's civil rights were restored prior to his jury service on this case. If not, the Court must then decide whether Mr. Faria properly challenged Juror #1's eligibility, and finally whether Juror #1's service on the jury led to an unfair trial.

#### 1. Restoration of Civil Rights

There is no definition in 28 U.S.C. § 1865(b)(5) of the phrase "civil rights," nor does that section define the process by which "civil rights" may be restored, but courts generally agree that the meaning of "civil rights" pertains to "the right to vote, the right seek and hold office, and the right to serve on a jury." *Caron v. United States*, 524 U.S. 308, 316 (1998) (in the context of a conviction as a felon in possession of a firearm). Moreover, the "[r]estoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition." *Id*. In light of this

admonition, the Court turns to Rhode Island law to determine if Juror #1's civil rights had been restored at the time of his jury service.

Rhode Island law restores the right to vote, right to hold office, and the right to serve on a jury on three different occasions. A convicted felon's voting rights are automatically restored when "such person is discharged from the facility." R.I. Const. art. II, § 1. A convicted person is not allowed to serve as a juror in state court "until completion of such felon's sentence, served or suspended, and of parole or probation regardless of a nolo contendere plea." R.I. Gen. Laws § 9-9-1.1(c). Finally, Rhode Island restores a convicted felon's right to run for elective or appointive state or local office "three years after the date of completion of such sentence and of probation or parole." R.I. Const. art. III, § 2.

Here, Juror #1's sentence of fifteen years imprisonment, with four years to serve, eleven years suspended, and concurrent probation began on March 23, 2001. *Rieger*, 763 A.2d at 1000. Because Juror #1 is not eligible to serve on a jury until he completes his suspended and probation sentences, he could not serve on a state jury until March 2016, or run for office until March 2019 and, therefore, two out of three of Juror #1's core civil rights were not substantially restored under Rhode Island law in 2015, and therefore he was not eligible to serve on this jury.

The Court's inquiry, however, does not end here. "The fact that a juror technically should have been disqualified, and was not, does not automatically require a new trial." *United States v. Uribe*, 890 F.2d 554, 562 (1st Cir. 1989). In order to be entitled to a new trial, Mr. Faria must establish that he properly challenged the juror and that this juror's service lead to an unfair trial such that the verdict should be invalidated.

### 2. Proper Challenges to Ineligibility

"[T]he right to exclude felons [as prospective jurors] must be affirmatively invoked; the Jury Selection and Service Act of 1968 (JSSA), 28 U.S.C. §§ 1861-78, establishes strict procedural requirements for challenging ineligible jurors." *Id.* at 561. The procedure is that "before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury." 28 U.S.C. § 1867(c). This is the "exclusive means by which . . . a party in a civil case may challenge any jury on the ground that the jury was not selected in conformity" with the requirements of jury selection. 28 U.S.C. § 1867(e).

The United States Supreme Court has held that "'[w]hen a party has had an opportunity of challenge, no disqualification of a juror entitles him to a new trial after verdict,'" even when the party learns that he was tried by an improper person. *Kohl v. Lehlback*, 160 U.S. 293, 301 (1895) (quoting *Wassum v. Feeney*, 1876 WL 10881, at *1 (Mass. Jan. 1, 1876)). In cases where a juror completed his "questionnaire truthfully and divulged his prior conviction, and [] jury questionnaires [were] available to counsel upon motion, prior to empanelment, under the district court's juror selection plan, [a party] seemingly waived the point" of challenging a statutorily disqualified juror after the verdict has been rendered. *Uribe*, 890 F.2d at 561.

Mr. Faria did not make use of the procedure for challenging Juror #1's eligibility to serve. Juror #1 acknowledged his conviction and sentence on both his juror questionnaire and his juror information form. Mr. Faria did not seek to obtain a copy of any of the questionnaires.[3]

---

[3] Section 15(a)(3) of the United States District Court for the District of Rhode Island Jury Plan provides: "Under the direction of the Court, the names of petit jurors and information obtained from the Jury Information Form may be provided to counsel or pro se parties participating in jury

The jury was empaneled in this case on August 4, 2015 and trial did not begin until August 24, 2015, giving Mr. Faria ample time to learn something about the members of the jury either through the questionnaires or otherwise. Therefore, Mr. Faria is not entitled to a new trial because he arguably waived his right to challenge Juror #1's service.

But, Mr. Faria had no inkling of a potential qualification issue with Juror #1 and therefore, the Court is "reluctant to rest its decision on waiver or forfeiture" when a party fails to request access to the questionnaires. *United States v. Schneider*, 111 F.3d 197, 204 (1st Cir. 1997). Instead, the Court chooses to turn to the question of whether Mr. Faria's trial was not fair due to actual or other prejudice resulting from Juror #1's service.

### 3. Prejudice

"To be accorded weight, a bias claim requires more than subjective characterizations unanchored in the realities of human experience." *Uribe*, 890 F.2d at 562. To establish that a juror's service rendered a trial unfair, Mr. Faria must "first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556. Mr. Faria contends that Juror #1 was dishonest because he never revealed his conviction when he was asked during voir dire "whether [he] had ever testified or otherwise been involved in a court case." (ECF No. 100 at 6). His silence and the nature of his underlying case, Mr. Faria argues, demonstrate that he was not impartial, justifying a new trial.

---

selection. However, if the interests of justice so require, any judge of this Court may order that the names of jurors remain confidential."

The Court disagrees. During voir dire, Mr. Faria's counsel was obviously focused on the potential jurors' experiences in civil cases, specifically personal injury and car accident cases like the one about to be tried, and not their involvement in criminal cases. According to the transcript,[4] Mr. Faria's counsel asked "has anyone served as a juror in another case, whether it be criminal or civil? And what kind of case have you, in fact, served on?" (Trial Tr. at 41, Aug. 4, 2015), whether any of the prospective jurors had "made a claim for personal injuries," whether anyone they knew personally had made claims for personal injuries?" (*Id.* at 42), and followed-up with whether "anyone, any relative, children, husbands, uncle, aunts that are very close to you, any of *them* been a Plaintiff or a Defendant in a case?" (*Id.* at 44) (emphasis added). Neither of the attorneys asked the jurors about any criminal convictions or any connection with the criminal justice system.

The Court finds that Juror #1's silence as to this series of questions during voir dire was appropriate and did not amount to a dishonest nondisclosure. "A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *McDonough*, 464 U.S. at 555. Moreover, Juror #1 told the truth about his record in his questionnaire so any argument that he had a motive for lying during voir dire is illogical.[5]

---

[4] The Court assumes that Mr. Faria is basing his asserting on his memory of voir dire as he never requested a copy of that day's transcript.

[5] Juror #1 did indicate in his questionnaire that his civil rights had been restored, but "[t]o invalidate the result of a [] trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555. The Court has no reason to believe that Juror #1's representation was anything other than a mistaken belief that because his voting rights were restored upon his release from prison that all of his civil rights were restored at that time. Therefore, the Court will not invalidate the jury's work in this case on this point.

Because Mr. Faria did not meet the first prong of the *McDonough* test, his argument that Juror #1's service deprived him of a fundamentally fair trial, entitling him to a new trial, fails. *Uribe*, 890 F.2d at 562 ("the statutory violation-allowing a convicted felon to serve-did not implicate the fundamental fairness of the trial.").

"An impartial jury is one 'capable and willing to decide the case solely on the evidence before it.'" *Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013) (quoting *McDonough*, 464 U.S. at 554 (internal quotation marks omitted)). Based on the totality of the facts in this case and the Court's observations of all of the jurors during the trial, the Court finds the jury was impartial and that Mr. Faria had a fair trial.

### B. Weight of the Evidence and the Law[6]

Mr. Faria also argues that he is entitled to a new trial because the verdict in Harleysville's favor was against the weight of the evidence. The Court disagrees.

Mr. Faria contends that the jury had to find in his favor because his testimony that another vehicle cut him off was uncontradicted, and Mr. Puliafico, the only eye witness to the accident, conceded that he did not see what caused Mr. Faria's vehicle to swerve and hit the tree. He further asserts that Trooper Collins, the first officer to arrive on the accident scene, testified that there was nothing in his report that would contravene Mr. Faria's report of a car in the right lane forcing him to swerve. This testimony, however, was contradicted by these very witnesses. Mr. Puliafico also told the jury that he never saw another vehicle cut Mr. Faria off and that, prior to calling 911, he saw Mr. Faria's car driving erratically and saw his two tires veer off the roadway and into the dirt. Trooper Collins' report of the accident noted that Mr. Faria failed to stay in the proper lane, crossed over the rumble strip, and entered the dirt median prior to striking

---

[6] The Court keeps in mind the deferential standard of review that it must follow with regard to the jury's verdict. *See Ahern*, 85 F.3d at 780.

a large tree. (ECF No. 15-3 at 3). Trooper Collins' testified at trial that, based on his discussions with all witnesses at the scene, he concluded that this was a single car accident and that Mr. Faria was at fault.

Because no other vehicle was ever identified and no witness other than Mr. Faria testified about seeing another vehicle swerve at his vehicle, the resolution of this case came down to witness credibility. "'It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury . . . In general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial.'" *United States v. Garcia*, 978 F.2d 746, 748 (1st Cir. 1992) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) (citations omitted)). In fact, the Court instructed the jury after they heard all of the evidence that they were "the sole judges of the credibility of the witnesses and the weight their testimony deserves . . . [and that they] may have to decide which testimony to believe and which testimony not to believe." (ECF No. 88 at 4). Presuming that the jurors "scrupulously follow[ed] the court's instructions," *United States v. Owens*, 167 F.3d 739, 756 (1st Cir. 1999), the jury ultimately determined, after a fair assessment of the evidence, that Mr. Faria's claim failed. Given all of the evidence, including the fact and expert testimony presented at trial, the Court finds that the jury's verdict was based on sufficient evidence such that Mr. Faria is not entitled to a new trial. *Acevedo-Garcia*, 351 F.3d at 565.

## IV. CONCLUSION

The Court DENIES Mr. Faria's Motion for New Trial. (ECF No. 97).

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge


Date:  December 7, 2015